■ In the Matter of JEWISH CHILD CARE ASSOCIATION, on Behalf of ALICE DAPHNE K., Appellant. FAYE K. (Anonymous) et al., Respondents. In the Matter of JEWISH CHILD CARE ASSOCIATION, on Behalf of BOAZ AHARON K., Appellant. FAYE K. (Anonymous) et al., Respondents.—In two proceedings, each, *inter alia,* to terminate parental rights, petitioner, an authorized agency, appeals from an order of the Family Court, Queens County, dated July 20, 1979, which, after a hearing, *inter alia,* dismissed the petitions. Order reversed, without costs or disbursements, and proceedings remanded to the Family Court for further proceedings consistent herewith. On a prior appeal involving the instant proceedings this court reversed two orders dismissing the petitions and remanded the proceedings to Family Court for further proceedings (see *Matter of Jewish Child Care Assn. v Faye K.,* 61 AD2d 985). The Family Court conducted a hearing *de novo* with respect to the petitions which were to terminate parental rights pursuant to section 384-b (subd 4, pars [c], [d]) of the Social Services Law. The petitions were dismissed and placement of the respondents' children with the appellant agency was terminated. Respondents were found to be competent, planning parents. Their history of mental illness was found not to render them incapable of providing adequate and proper care for their children at present or in the future. We reverse and direct that a hearing be held at

which further psychiatric testimony should be elicited and a new determination made. On this record, there is an insufficient basis to render a proper determination. In its memorandum, the Family Court indicated that on the issue of mental illness it relied quite heavily on the testimony of Dr. Robbins, a Family Court psychiatrist. Dr. Robbins testified at the hearing that the respondent father was a manic-depressive in remission and treatable. This diagnosis was contrary to every other diagnosis made of him, including Dr. Robbins' own 1977 diagnosis. All other evaluations indicated he suffered from schizophrenia. Indeed, a diagnosis made at Long Island Jewish-Hillside Hospital, the site of the respondent father's 1978 psychiatric hospitalization, evaluated him as paranoid-schizophrenic. This diagnosis was made only one week prior to Dr. Robbins' most recent evaluation and was based on much more extensive observation. The record of this hospitalization, including the diagnosis, was before the Family Court. No one from Long Island Jewish-Hillside Hospital testified, but it should be noted that the papers before this court include a motion made in the Family Court to order such testimony, but there is no indication of its disposition. Both parents continued to deny any mental health problems at the hearing although each had two prior psychiatric hospitalizations. A social worker for the children testified to bizarre behavior on the part of the respondent father for several months prior to his most recent hospitalization. Moreover, even were one to accept Dr. Robbins' evaluation, it places a great deal of responsibility on the respondent mother. She would have to recognize the signs of oncoming illness and direct her husband to obtain treatment. Dr. Robbins' evaluation of the respondent mother states that she is passive and dependent. Her testimony at the hearing indicates that she was unaware that her husband's latest illness was behavior at all out of the ordinary. Her response to future episodes, according to her own testimony, would be to let them run their course or perhaps call a doctor. The contradictory evidence as to the respondent father's mental condition combined with the testimony of the respondents themselves should have suggested to the Family Court that further psychiatric testimony was necessary before making a determination. In particular the testimony of Dr. Rudy, the psychiatrist who diagnosed the respondent during his 1978 hospitalization, should have been before the court. Without it, the court had only the opinion of Dr. Robbins, who stood alone in his diagnosis of the respondent father. This was not sufficient. These inadequacies in the record are particularly important in that the Family Court not only dismissed the petitions to terminate parental rights but also terminated placement of the children with the appellant. The mere recital in its memorandum that the best interests of the children were considered does not satisfy section 631 of the Family Court Act. Here, where the children had been in foster care for an extended period of time and placement had not expired, a more complete record on the parents' mental condition was essential. In brief, the mental condition of the parents, especially the respondent father, was not sufficiently developed to sustain the determination to dismiss the petitions and terminate placement. Mollen, P. J., Damiani, Lazer and Margett, JJ., concur.